ordered the ship to be burned, and this was only prevented by the interference of the master of the Amiable. It is further stated, that after the master and crew of La Belle Creole were received on board the Amiable, they lost sight of the said vessel, and, supposing she had gone down, the master of the Amiable determined to proceed to America. When the sun rose the next day La Belle Creole was discovered, boarded, and the greater part of the articles saved were taken on board the Amiable. She had, at this time, eleven feet of water in the hold, and the water was up to the cabin floor; on leaving her she was set on fire. It is also admitted in the depositions of these witnesses, that the crew of La Belle Creole assisted in saving the goods, &c. After the arrival of the Amiable in Philadelphia, an attempt was made, by the officers of La Belle Creole, to bribe the mate, and one of the seamen of the Amiable, to assist in smuggling some of the articles saved. In the depositions of the witnesses produced on the part of the respondents, some of the circumstances stated in the claim and answer are detailed; but no proof was offered in support of the assertion in the claim and answer, that Captain Davor entertained any expectation, or intention, that he would, at any time, regain possession of the ship, goods, &c. One half of the cargo of La Belle Creole had been thrown overboard before the Amiable was spoken; and, but for her assistance, all would have perished.

---

## Case No. 17,166.

### WARDROP v. DOBSON.

[Cited in Scott v. Jones, Case No. 12,536. See note attached thereto. Nowhere reported; opinion not now accessible.]

---

WARDWELL (SANDS v.). See Case No. 12,306.

WARDWELL (U. S. v.). See Case No. 16,640.

---

## Case No. 17,167.

### WARE v. BALTIMORE STEAM TOWING CO.

[Cited in Wallis v. Chesney, Case No. 17,110. Nowhere reported; opinion not now accessible.]

---

## Case No. 17,168.

### WARE v. BRADBURY et al.

[3 Sumn. 186.] [1]

Circuit Court, D. Maine.    May Term, 1838.

TAX ASSESSORS—CERTIFICATE OF OFFICIAL OATH—MODE OF ASSESSMENT.

1. A memorandum on the books of the town clerk, that certain persons were "sworn to office" as assessors, signed by the clerk, as a justice of the peace, and not as town clerk, is a sufficient certificate of the official oath, according to the requirements of the statutes of Maine.

2. Where a person hands to the assessors a schedule of all his taxable property, in order to be taxed, they must either tender him his oath to the schedule, or tax him according to it. But where the schedule is not presented as complete, then the tax will not be rendered

[1] [Reported by Charles Sumner, Esq.]

illegal if the assessors tax the party for money at interest, although no such item is contained in the schedule.

This was an action of trespass and false imprisonment. Plea, the general issue.

The cause was tried before Ware, the district judge, at the October term, 1836. The plaintiff, to prove the issue on his part, produced Jos. H. Hill, the deputy jailer for Somerset county, by whom it was proved, that the plaintiff was committed to jail, February 19, 1835, on a warrant from the defendants. He was liberated the same day, on giving the usual bond for the jail liberties. The officer committing him had a tax-bill, which, at the time, was compared with the copy left with the jailer. The defendants justified as assessors of the town of Athens, for the years 1833 and 1834. To prove the legality of the road or highway tax assessed on the plaintiff in 1833, the defendants produced the warrant for the town meeting for 1833, and the records of the town, showing the proceedings of that meeting.

The first objection raised on the part of the plaintiff was, that no certificate was filed of the administration of the oath to the defendants by a justice of the peace; but this objection, on the inspection of the records, was overruled.

The second objection arising on the tax of 1833 was, that the plaintiff, in pursuance of law, handed in to the assessors a schedule of his taxable property in the town of Athens, which was received by the assessors, without requiring the plaintiff to make oath to the same, and that afterwards, without further notice to the plaintiff, and without again calling on the plaintiff, they greatly increased his valuation, by adding thereto a large amount of money at interest. On this point the defendants introduced, as a witness, William Hight, who testified, that he was one of the assessors for the year 1833. That the assessors called on the plaintiff for a list of his taxable property. That [John] Ware had a list, which he handed to the assessors. [Wingate] Bradbury looked at it, and said he expected him to give in an account of his money at interest. Ware gave him to understand he should leave it with the assessors. There was no discussion about the amount of money at interest. One item on his list was stock in trade. He did give a list of taxable property to the assessors. Bradbury, one of the defendants, took the list, which Ware handed. They did not require Ware to make oath to the list. At the time the assessors met to make the assessment they had his list before them.

Lemuel Williams, called by the plaintiff, testified, that he was present with the assessors of 1833, when the plaintiff gave in to the assessors a schedule of taxable property. Ware handed the schedule, and they took it down. Among the items was stock in trade.

The judge, on this point, ruled that the tax of 1833 was not rendered void by increasing